MORSE & BRUNNER, PLAINTIFFS IN ERROR, V. ANDREW TRAYNOR, DEFENDANT IN ERROR.

[FILED MAY 31, 1889.]

1. **Action**: REAL PARTY IN INTEREST: TRIAL: QUESTION FOR JURY. One T. being the owner of certain real estate, desired to sell the same, and employed M. & B., real estate agents, to effect a sale at a specified price. The price was advanced from time to time until about June 1, 1887, when M. & B. employed one S. to find a purchaser on the terms specified, which, in two or three days afterwards, he did. S. thereupon brought an action against T. for his commission, and was defeated. M. & B. thereafter brought an action against T. to recover commission for the sale, when the judgment against S. was pleaded in bar.' *Held:* First, that the judgment against S. would not bar a recovery by M. & B. Second, that the remedy of S. to recover compensation was against M. & B. Third, that questions of fact must be submitted to the jury, and an instruction in effect withdrawing such questions from the jury, was erroneous.

2. ———: BAR. A finding and judgment against one who from want of interest cannot maintain the action, will not bar the real party in interest from bringing and maintaining the suit.

ERROR to the district court for Douglas county. Tried below before HOPEWELL, J.

*Warren Switzler,* for plaintiff in error, cited: Herman on Estoppel, sec. 102; *Hardy v. Mills,* 35 Wis. 149; *Towns v. Nims,* 5 N. H. 259, *Hill v. Morse,* 61 Me. 541; *Strother's Adm'r v. Butler,* 17 Ala. 735; *Schribar v. Platt,* 19 Neb. 630.

*Hall & McCulloch,* for defendant in error, cited: *Landis v. Hamilton,* 77 Mo. 554; *Stoddard v. Thompson,* 31 Iowa, 80; *Cole v. Favorite,* 69 Ill. 457; Herman on Estoppel, sec. 150; *Emery v. Fowler,* 39 Me. 326; *Warfield v. Davis,* 14 B. Monroe, (Ky.,) 40.

MAXWELL, J.

The plaintiffs brought an action against the defendant to recover certain commissions for the sale of real estate belonging to the defendant, and on the trial a verdict and judgment were rendered for the defendant.

The cause of action is stated in the petition as follows: "That heretofore, to wit, prior to the 4th day of June last, the said defendant employed said plaintiffs, as real estate agents in said city, to procure for him a purchaser of lot one in block two hundred and four and one-half, in the city of Omaha, aforesaid; that in the pursuance of said request, these plaintiffs did produce and furnish said defendant a purchaser for said premises, and did negotiate a sale thereof for the price for which the same had been left with them for sale, to-wit, the price of twelve thousand five hundred dollars, and for which the defendant agreed to pay the plaintiffs the usual and customary commission charged by real estate men in said city at said time for said sale, amounting to three hundred and thirty-seven dollars and fifty cents, which amount, the plaintiffs allege the fact to be, is now due and payable to the plaintiffs from the defendant for said services, with interest from the 4th day of June, 1887, on which day the sale of said premises took place, by and through the agency of said plaintiffs, and to the purchaser who was by them produced for said defendant."

To this petition, the defendant, in his amended answer, alleges that "On the —— day of ——, 1887, an action was brought in the county court of said county for the identical cause of action sued on herein by one George Seah against this defendant; that said action was for the use and benefit of said plaintiffs, Morse & Brunner, and they were the real though not the nominal parties plaintiff; that on the —— day of November, said action was tried in said court, and judgment was rendered in favor of this defend-

ant; that no appeal was taken from said judgment so rendered in the county court, and said plaintiffs are bound by the same and estopped to bring this action against defendant for the same cause of action in this court."

The testimony tends to show that in the latter part of the year 1886, the defendant placed the property in question in the hands of the plaintiffs for sale at $10,000. Afterwards, in January, 1887, he raised the price to $12,000 and so notified the plaintiffs. Soon afterwards he again raised the price to $12,000 net to him. He claims to have discharged the plaintiffs sometime in May, 1887; but this is denied by them. About the 1st of June, 1887, the plaintiffs informed one George Seah, who was also a real estate agent, of the terms and conditions of sale of the property in dispute and agreed with him that if he could find a purchaser for the property upon the terms stated, they would divide the commission with him. Seah thereupon in a few days, found a purchaser for the property. There is no dispute about this, the only controversy on that point being whether the price agreed to be paid was the gross sum or net to the defendant.

Mr. Seah testifies on that point:

Q. You say you took them to see the property. Is that your answer?

A. Yes, sir.

Q. Was any one present when you took them there.

A. When I took ——?

Q. When you took them to see the property— do I understand you to say that you took them to the property to show it to them?

A. Yes, sir.

Q. Was there any one present at the property when you went there to show it to them—did you see any one on the property?

A. Not when I was showing it to them. At first I did not see any one.

Q. Well, after you showed it to them first, did you leave there, or did you not?

A. No; I showed them the outside of the property, and they desired to see the inside of the house.

Q. State what you did with them—what was the object in taking them there.

A. The object was to sell them the property. I left them on the outside, and I went to the back part of the house to see Mr. Traynor.

Q. Did you see him?

A. Mr. Traynor came out, and I introduced myself, and my business, and asked him if the property was for sale, and he said it was.

Q. Did you or did you not say anything to him at that time with respect to what your business was?

A. Yes; I introduced myself and my business.

Q. What did you say your business was?

A. Real estate.

Q. Well, go ahead.

A. I asked him if the property was for sale, and he said it was. I asked him the price, and he said it was $14,000. I told him Mr. Brunner had placed it with me to sell for $12,000 net, and to ask $12,500. He says, "Well, that is all right." He says, "I want $14,000 after the 1st of August, but if you sell it immediately, why, I will let it go."

Q. Then what was done further by you?

A. I told him I had some parties out on the sidewalk and had priced it to them for $12,500, and he sent me to bring them in. I went out and brought Mr. and Mrs. Stewart in the yard and introduced them in the yard to Mr. Traynor. He showed them through the house, and they bought the property right there.

The defendant testifies on that point as follows:

Q. When Mr. Seah came up there to see you did he state to you that he represented Morse & Brunner?

A. No, sir, he did not.

Q. Did he at that time make any claim to you that he represented Morse & Brunner at all?

A. No, sir, he did not. I will state the conversation we had.

Q. You may state the conversation you had.

A. When Mr. Seah came there I was standing at the back door, and he wanted to know if my name was Traynor; I told him it was.

Q. Was that the first time you ever saw Mr. Seah?

A. Yes; the first time I ever saw Mr. Seah to know him. He wanted to know if that property was for sale. I told him it was. He says, "What are the figures?" I says, "$14,000." He says, "I understand that Morse & Brunner had it for $12,500." He did not represent that he was an agent for Morse & Brunner, and he did not show me any card, or introduce himself in any shape or form. I says, "If I can get $12,500 for it now I will take it, but after the first of August I want $14,000. I will build here." I calculated to build some buildings.

Q. Did he at that time claim any commission from you, or ask for any commission from you?

A. No, sir; there was nothing said about any commission, or anything else. Then he says, "I do not want the property myself; I have a friend around to the front." He says, "Come around and I will introduce them." I says, "There is no use of introducing me to anybody for any less figures than that," and he took me around and introduced me to Mr. and Mrs. Stewart.

Q. When was the first time you ever learned Mr. Seah claimed a commission?

A. The first time that Seah claimed a commission was in the Omaha Savings bank, on the 30th of June, when the original papers were turned over.

Q. State to the jury what conversation you had at that time in regard to commissions.

A. When the final settlement came up, it appears that

Mr. Seah—and Mr. Stewart had paid Mr. Seay $40; that is the way it was—to bind the bargain. I did not get the $40. I did not know anything about the $40 being paid. When Stewart came to pay me he wanted to deduct the $40 that he had paid to Seah. I made the bargain with him. I says, "You are the man I made the bargain with," and Mr. Stewart says, "It is for you and Seah." I says, "That is all right, the contract is $12,500," which Mr. Stewart paid me, and Mr. Seah demanded his commission. I told him I did not owe him any commission; "but," I says, "if you want to take $40 for your trouble, I will make you a present of the $40;" not that I thought he was entitled to it.

The testimony shows that Seah brought an action against the defendant and failed to recover. The exact ground upon which he was defeated does not appear, but apparently because there was no privity of contract between them. The court instructed the jury that:

"It appears in evidence and is undisputed that the property for the sale of which the plaintiffs seek to recover in this action, was placed in the hands of the plaintiffs, to sell, by the defendant, at a stipulated price. It also appears that the plaintiffs entered into an arrangement, or agreement, with one Seah; that if said Seah should procure a purchaser for said property, that they, the plaintiffs, would divide commission with him. In pursuance of said agreement, it also appears that said Seah did find a purchaser and effect a sale and that the said Seah afterwards sued the defendant in the county court for commission on account thereof, said commission to be divided with plaintiffs, if recovered. In view of all the testimony in this case, the court instructs you, that said suit was an adjudication of the matters in issue here, and you are therefore directed to bring in a verdict for defendant.

In giving this we think the court erred.

Brunner testifies that the defendant employed him to sell

the property in controversy and that he had employed Seah
to find a purchaser, and that the agency of the plaintiffs
for the defendant to sell said property was in full force
when the sale was effected. Other witnesses testified to
substantially the same facts. Seah testifies that he was em-
ployed by the plaintiffs to effect a sale upon certain terms
and conditions, and that he so informed the defendant.
If this testimony is true, the plaintiffs will be entitled to
recover their commission and will be liable to Seah for
one-half thereof. Seah must look to the plaintiffs for his
compensation and not to the defendant. And this disposes
of the objection that the judgment against Seah was a bar
to this action. The question here presented was before the
court in *Gayer v. Parker*, 24 Neb. 643, and it was held
that if different proof is required to sustain the action, a
judgment in one of two cases is no bar to the other.

At common law, a mistake in bringing the action — as in
assumpsit when it should have been trespass on the case —
was no bar. In such action as it would be impossible to
prove a promise, express or implied, the action of assumpsit
would fail, but this would not preclude a recovery upon
the proper statement of facts and proof. So if a cause of ac-
tion is brought against a defendant by one who is not entitled
to a recovery and is defeated, this will not prevent another
who has a good cause of action against the defendant upon
the same matter, from maintaining an action. Suppose the
holder of a promissory note should bring an action thereon,
and on the trial the court should find from the proof that
he was not the real party in interest — the person entitled
to the avails of the judgment — and therefore should find
against him and dismiss the action: would such dismissal
defeat the real party in interest from bringing an action
thereon? That it would not will be conceded, because the
case was not decided on the merits — that there was no
cause of action against the defendant on the matter in dis-
pute — but simply that no such cause existed on such mat-

ter in favor of the plaintiff. The requirement of the Code is that an action shall be brought in the name of the real party in interest — except in certain cases mentioned, of which this is not one. The defendant's attorneys recognize this requirement of the Code and say that the action was brought for the plaintiff's benefit, and therefore they are bound by the judgment. Even if such were the case it will not bar this action.

The plaintiffs were not parties to the record, and the defendant evidently objected that he had made no contract with Seah; that he was a mere volunteer, and therefore the defendant was not indebted to him. The question whether or not the defendant employed the plaintiffs to sell his property, and that in pursuance of such employment they, through Seah, did sell the same, has not yet been tried. Experience has shown that mistakes from various causes are liable to occur in bringing actions — such as ignorance of facts, failure of proof on a material point, exclusion of evidence, etc. The law recognizes this, and hence permits the amendment of a petition in any form, so that the identity of the cause of action is preserved, and of the answer to set up any defense which the defendant may have. The law endeavors as far as possible to protect and enforce the rights of parties; and while a judgment upon the merits will conclude all who were properly before the court in that action, a judgment against one who could not maintain the action for want of interest therein, will not bar the real party in interest. No question of privity arises in this case, a privy being one who claims under a party as to interest, estate, or kindred. (*Bush v. Knox*, 2 Hun, 578; Wells, Res Adjudicata, 23.)

The plaintiffs, through Seah, effected a sale of the defendant's property for $12,500. The plaintiffs say that they were authorized to sell at $12,000 net, and that the $500 in addition was for their commission, and Seah testifies that he so informed the defendant before the sale of

the property.   If this testimony is believed by the jury, it will be their duty to return a verdict for the plaintiffs.   In any event the questions are questions of fact to be submitted to the jury, under proper instructions from the court.

The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other Judges concur.